## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE:

APPLICATION OF ATVOS AGROINDUSTRIAL
INVESTIMENTOS S.A. UNDER 28 U.S.C. § 1782 TO
TAKE DISCOVERY FROM BANCO BILBAO
VIZCAYA ARGENTARIA, S.A., INTESA
SANPAOLO S.P.A., NEW YORK BRANCH, LONE
STAR GLOBAL ACQUISITIONS, LTD, LONE STAR
GLOBAL ACQUISITIONS, LLC, LONE STAR
NORTH AMERICA ACQUISITIONS, L.P., LONE
STAR GLOBAL ACQUISITIONS (NY), LLC, LONE
STAR NORTH AMERICA ACQUISITIONS, LLC,
LSF10 BRAZIL U.S. HOLDINGS, LLC, MUFG
BANK, LTD., NATIXIS S.A., NEW YORK BRANCH,
THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.,
AND SUMITOMO MITSUI BANKING
CORPORATION

Case No. _____

---

### MEMORANDUM OF LAW IN SUPPORT OF ATVOS AGROINDUSTRIAL
### INVESTIMENTOS S.A.'S APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782
### TO TAKE DISCOVERY FROM RESPONDENTS
### FOR USE IN FOREIGN PROCEEDINGS

Date: May 19, 2020

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel. +1 212 488 1200
Fax. +1 212 488 1220

D. Farrington Yates
Michael A. Sanfilippo
E. Martin De Luca

*Attorneys for Applicant Atvos*
*Agroindustrial Investimentos*
*S.A.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

RELEVANT FACTS ..........................................................................................3

    I.     Atvos and Affiliates .............................................................3

    II.    The Atvos Brazilian Restructuring Proceedings........................................4

    III.   Lone Star's Illegal Attempt to Take Control of Atvos by Executing a
Share Purchase Agreement in New York, Without the Required Notice ...............6

    IV.   Atvos' Attempt to Secure its Rights in the Brazilian Proceedings ........................8

DISCOVERY TARGETS .......................................................................................9

THE REQUESTED DISCOVERY .......................................................................11

ARGUMENT.........................................................................................................11

    VII.   THE APPLICATION SATISFIES THE STATUTORY
REQUIREMENTS OF § 1782.....................................................................12

        A.     Respondents are "Found" in the District ...................................13

        B.     The Requested Discovery is "for Use" in the Brazilian Proceedings........15

        C.     Applicant is an "Interested Person" Due to Its Key Role in the
Brazilian Proceedings ................................................................16

    VIII.  THE COURT SHOULD GRANT THE § 1782 APPLICATION UNDER
THE DISCRETIONARY FACTORS IN *INTEL* ................................................16

        A.     The Court Should Authorize the Requested Discovery as Most
Respondents are not Participants in the Brazilian Proceedings ................16

        B.     The Brazilian Courts in the Underlying Actions are Sophisticated
and Receptive to the Receiving the Requested Discovery........................19

C.    This Application Does Not Circumvent Any Proof-Gathering

Restrictions ............................................................................20

D.    The Requests Are Narrowly Tailored and Targeted .................................21

**CONCLUSION** ...............................................................................................**22**

## TABLE OF AUTHORITIES

**Cases**

*Application for an Order Permitting Metallgesellschaft AG to take Discovery*,

    121 F.3d 77 (2d Cir. 1997) ....................................................................... 16

*Application of Esses*,

    101 F.3d 873 (2d Cir. 1996) ..................................................................... 16

*Application of Malev Hungarian Airlines*,

    964 F.2d 97 (2d Cir. 1992) ....................................................................... 17

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*,

    571 U.S. 49 (U.S. 2013) ........................................................................... 13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,

    673 F.3d 76 (2d Cir. 2012) ................................................................. 12, 16

*Chevron Corp. v. Berlinger*,

    629 F.3d 297 (2d Cir. 2011) ..................................................................... 17

*Euromepa S.A. v. R. Esmerian, Inc.*,

    51 F.3d 1095 (2d Cir. 1992) ............................................................... 17, 19

*Gucci Am., Inc. v. Weixing Li*,

    768 F.3d 122 (2d Cir. 2014) ..................................................................... 14

*In re Accent Delight Int'l Ltd.*,

    869 F.3d 121 (2d Cir. 2017) ..................................................................... 15

*In re ALB-GOLD Teigwaren GmbH*,

    2020 WL 122943 (E.D.N.Y. Jan. 10, 2020) ............................................ 14

*In re Apostolos Mangouras to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. 1782*,

2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ......................................................... 20

*In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*,

466 F. Supp. 2d 1020 (N.D. Ill. 2006) ................................................................... 19

*In re Application of Chevron Corp.*,

709 F. Supp. 2d 283 (S.D.N.Y. 2008) ................................................................... 17

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,

2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ........................................................ 15

*In re Application of Hill*,

2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007).......................................................... 20

*In re Application of Inversiones y Gasolinera Petroleos Venezuela*,

2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ............................................................ 22

*In re Application of Procter & Gamble Co.*,

334 F. Supp. 2d 1112 (E.D. Wis. 2004)................................................................... 18

*In re Application of Sveaas*,

249 F.R.D. 96 (S.D.N.Y. 2008) .............................................................................. 15

*In re de Aquino Chad*,

2019 WL 2502060 (S.D.N.Y. Jun. 17, 2019) ........................................................ 20

*In re del Valle Ruiz*,

939 F.3d 520 (2d Cir. 2019)...................................................................... 13, 14, 22

*In re Gemeinschaftspraxis Dr. Med. Schottdorf*;

   2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ........................................................ 20

*In re Godfrey*,

   526 F. Supp. 2d 417 (S.D.N.Y. 2007) .................................................................... 14

*In re Gorsoan Ltd.,*

   2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Ltd. & Gazprombank*

   *OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery v. Bullock*, 652 F.

   App'x 7 (2d. Cir. 2016)........................................................................................ 21

*In re Pimenta*,

   942 F. Supp. 2d 1282 (S.D. Fla. 2013) ............................................................ 19, 21

*In re Sociedad Militar Seguro de Vida*,

   985 F. Supp. 2d 1375 (N.D. Ga. 2013) .................................................................. 18

*In re Xavier*,

   2006 WL 858489 (11th Cir. Apr. 4, 2006) ............................................................. 19

*Intel Corp. v. Advanced Micro Devices, Inc.,*

   542 U.S. 241 (2004)........................................................................ 3, 16, 18, 19, 21

*Lopes v. Lopes*,

   180 F. App'x 874 (11th Cir. 2006) ....................................................................... 19

*Lufthansa Technik AG v. Astronics Corp.*,

   553 F. App'x 22 (2d Cir. 2014) ........................................................................... 17

*Marubeni Am. Corp. v. LBA Y.K.*,

   335 F. App'x 95 (2d Cir. 2009) ........................................................................... 18

*Matter of de Leon*,

    2020 WL 1047742 (D.D.C. Mar. 4, 2020) ............................................................................... 14

*Medeiros v. Int'l Game Tech.*,

    2016 WL 1611591 (D. Nev. Apr. 22, 2016) ............................................................................ 19

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*,

    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ....................................................................... 21

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,

    142 F. App'x 516 (2d Cir. 2005) .............................................................................................. 18

*Ukrnafta v. Carpatsky Petroleum Corp.*,

    2009 WL 2877156 (D. Conn. Aug. 27, 2009) ....................................................................... 21

*United States v. Stein,*

    *488 F.Supp.2d 350 (S.D.N.Y.2007)* ......................................................................................... 18

**Statutes**

28 U.S.C. § 1782 ................................................................................................................... passim

## PRELIMINARY STATEMENT

Applicant Atvos Agroindustrial Investimentos S.A. ("Atvos Investimentos" or "Applicant") seeks an order, pursuant to 28 U.S.C. § 1782, authorizing it to take targeted discovery from a New York and Texas-based vulture fund ("Lone Star") and certain other New York and foreign-based lenders that are engaged in an illegal hostile takeover attempt in Brazil of Applicant's subsidiary Atvos Agroindustrial S.A. – Em Recuperação Judicial ("Atvos"), a large Brazilian agribusiness firm.  Those entities sought to effectuate the illegal takeover by transacting a Share Purchase Agreement ("SPA") in New York with numerous New York-based counterparties.

Applicant has succeeded thus far in preventing Lone Star from obtaining an initial injunction in Brazil to implement the illegal takeover attempt, but critical information sited in this District is required for Applicant to protect its rights in Brazil.  Applicant is also awaiting a decision in a separate injunction proceeding in Brazil to prevent Lone Star from seizing control of Atvos, which is also dependent on information that is very likely present in New York.

Atvos is a foundational Brazilian company that is critical to Brazil's production of ethanol and sugar.  It is valued at approximately BRL 6 Billion (roughly US $1.25 billion) and directly or indirectly employs over 40,000 Brazilian workers.  Despite Atvos' inherent value, Lone Star purportedly purchased a controlling stake for the nominal sum of US $5 million by virtue of the SPA, which was transacted in New York.  Applicant has acted in good faith and attempted to resolve the dispute outside of litigation, but has been forced to vigorously enforce its rights in numerous actions in Brazil.

Applicant has commenced two actions in Brazil to enjoin the application of the SPA and to protect its and Atvos' majority creditors' legal rights, which are under grave threat from Lone

Star's illegal actions.  Atvos is also a debtor in a large judicial restructuring in Brazil that is akin to a U.S. Chapter 11 proceeding, and in which it successfully obtained an injunction prohibiting Lone Star's attempts to delay a critical creditor's meeting now scheduled for May 20, 2020.

Applicant alleges that Respondents engaged in misconduct by entering into the SPA by fraudulent means and illegally seeking to gain control over a debtor in Judicial Recovery proceedings without making the required disclosures or notices, among other things.   The discovery sought is *critical* for use in Applicant's proceedings in Brazil seeking to invalidate the SPA and enjoin the hostile takeover attempt, which violates numerous provisions of Brazilian law. The discovery sought is likewise critical for Applicant to defend its rights in the Judicial Recovery proceeding and in separate actions commenced by LSF10 Brazil U.S. Holdings ("LSF10" or "Lone Star Brazil") in Brazil seeking to enforce the illegal acquisition of Atvos' control stake (collectively, the "Brazilian Proceedings").

Applicant accordingly seeks targeted discovery from various New York and Texas Lone Star entities[1] and other New York and foreign-based lenders, including LSF10, Natixis S.A., New York Branch ("Natixis, New York Branch"), Banco Bilbao Vizcaya Argentaria S.A. ("BBVA"), Intesa Sanpaolo S.p.A., New York Branch ("Intesa Sanpaolo NY"), MUFG Bank, Ltd. (formerly known The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG Bank"), and Sumitomo Mitsui Banking Corporation ("Sumitomo Mitsui") (together, the "Respondents").  The Respondents are all "found" in the Southern District of New York by virtue of their roles in the underlying SPA transaction in New York, forum selection clauses in the underlying loan documents consenting to jurisdiction in this District, and/or their residence in New York.

---

[1] Those entities include two based in New York, (i) Lone Star Global Acquisitions (NY), LLC, and (ii) Lone Star North America Acquisitions, LLC, and three based in Texas, (i) Lone Star Global Acquisitions, Ltd., (ii) Lone Star Global Acquisitions, LLC, and (iii) Lone Star North America Acquisitions, L.P. Sanfilippo Decl. Ex. 1.

Granting Applicant's requested discovery is warranted as there is ample reason to believe Respondents have custody or control of documents that are highly relevant to the Brazilian Proceedings. *First*, the Application satisfies each of § 1782's statutory requirements because Respondents are "found" in this district, the discovery is sought "for use" in foreign proceedings, and Applicant is an "interested person." *Second*, the relevant discretionary factors identified in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) strongly support granting the Application. The vast majority of the discovery targets are not participants in the Brazilian Proceedings, the discovery sought is narrow, tailored and appropriate, and the discovery material would be well-received by the Brazilian courts, which are fielding vigorous litigation related to the core information sited in New York related to the SPA and the underlying transactions at issue.

## RELEVANT FACTS

### I.    Atvos and Affiliates

Atvos is a Brazilian holding company that, through its subsidiaries, produces and commercializes ethanol, sugar, and electric energy from the biomass of sugarcane. Declaration of Laura Gadelho ("Gadelho Decl.") at ¶ 4. Atvos is the second-largest producer of sugar cane-based ethanol and sugar in Brazil, reportedly supplying 7% of the total Brazilian annual ethanol production, with over 10,000 employees and 30,000 indirect workers. *Id*. Atvos entered into contracts with thousands of rural partners, distributors, and suppliers across Brazil, creating revenue for many families who rely on Atvos to make a living. *Id*. Atvos has been recently valued at BRL 6 billion (approximately US $1.25 billion). *Id.* at ¶ 5.

Atvos is wholly-owned by the Applicant and is an indirect subsidiary of the Odebrecht Group, a leading Brazil-based global organization in the fields of engineering and construction, industry and in the development and operation of infrastructure and energy projects, with a

presence in 27 countries. *Id.* at ¶ 6.

## II.    The Atvos Brazilian Restructuring Proceedings

In order to secure financing to pursue certain projects in the natural gas and liquids industry, Gasoducto Sur Peruano S.A ("GSP"), an affiliate of Odebrecht Group,  entered into a US $600,000,000 Term Loan Agreement on August 29, 2014, with certain lenders and financial institutions, including Natixis, New York Branch, BBVA, Sumitomo Mitsui, MUFG Bank and Intesa Sanpaolo NY (the "Bridge Lenders"). *Id.* at ¶ 7; Sanfilippo Decl. Ex. 19 (the "Loan Agreement").  In connection with the Loan Agreement, certain Odebrecht entities signed guaranty agreements that effectively pledged as collateral certain interests in Atvos in the event of default. Gadelho Decl. at ¶ 12; Sanfilippo Decl. Ex. 27 (the "Fiduciary Assignment Agreement").

Despite their efforts to make partial payments in the face of serious commercial difficulties, on April 8, 2016, the Loan Agreement matured and GSP and the Odebrecht entities defaulted on their obligations. Gadelho Decl. at ¶ 10.  On April 24, 2017, certain of the Odebrecht entities and the Bridge Lenders entered into a Forbearance Agreement, pursuant to which Atvos Investimentos effectively agreed to grant 50% plus one share of Atvos's capital stock as collateral, for the benefit of the Bridge Lenders. Gadelho Decl. at ¶ 11; Sanfilippo Decl. at Ex. 20.

In June 2017, certain Lone Star entities acquired debentures related to Atvos, by which Lone Star obtained a pledge of certain of Atvos' shares as collateral.[2] Gadelho Decl. at ¶ 19.  Under this agreement, Lone Star purportedly would be entitled to enforce and consolidate the property of the relevant shares of Atvos, should an event of default occur. *Id*.

On December 17, 2018, further financial difficulties in the sugar and ethanol industry

---

[2] A separate entity, Planner Trustee Distribuidora de Titulos e Valores Mobiliarios Ltda. ("Planner"), acted as representative of Lone Star and certain other lenders in that transaction.

caused a default in connection to the Lone Star debentures described above on one tranche of quarterly interest payment, amounting to approximately BRL 47 million. *Id.* at ¶ 20.  On January 8, 2019, Lone Star initiated a lawsuit in a Brazilian state court through a representative, declaring the early maturity of the full debt and enforcing the total adjusted amount of BRL 1 billion (approximately US $171 million) against Applicant. *Id*.  Applicant unsuccessfully attempted to negotiate a resolution to the claim with Lone Star. *Id*. at ¶ 21.

As a result of the dispute with Lone Star, and in addition to certain other financial difficulties Atvos encountered, Atvos filed a request for judicial recovery protection before the First Court of Bankruptcy, Judicial Recovery Claims of the District of São Paulo on May 29, 2019 (the "Judicial Recovery"). *Id.* at ¶ 14.  This ongoing proceeding is similar to a Chapter 11 proceeding in the U.S. *Id*.  Atvos' debts amount to approximately BRL 11 billion (approximately US $1.89 billion). *Id*. at ¶ 15.  The vast majority of its debt is held by the large Brazilian financial institutions, namely, the Banco Nacional do Desenvolvimento Economico e Social (BNDES), Banco do Brasil S.A., Banco Itaú Unibanco S.A., and Banco Santander (Brasil) S.A. *Id.* at ¶ 16.  Atvos is continuing to negotiate with those entities about an orderly restructuring of Atvos' debt.

Atvos engaged in negotiations with those main creditors regarding a debt restructuring plan from May 2019 through May 2020. *Id.* at ¶ 22.  The parties negotiated a plan that contemplated the possible conversion of half of the outstanding debt of the Atvos Group (comprised of Atvos Investimentos, Atvos Participações and affiliates) in the amount of approximately BRL 5.5 billion, into shares representing 90% of the share capital of a holding company. *Id*. ¶ 23.  The main creditors, representing over 90% of the Atvos' Group's credit, indicated their endorsement of the proposed plan. *Id*.  The plan was then scheduled to be voted on May 8, 2020. *Id*.  Upon information and belief and based on feedback from the major creditor groups, Atvos understood that the plan

was likely to be approved at that creditors meeting. *Id*.

The approval of the judicial recovery plan was (and continues to be) crucial to preserve the employment of thousands of workers across Brazil and to enable Atvos to continue its business.

## III.   Lone Star's Illegal Attempt to Take Control of Atvos by Executing a Share Purchase Agreement in New York, Without the Required Notice

On May 4, 2020, however, a Lone Star special purpose entity, LSF10, and Natixis, New York Branch, in its capacity as "Collateral Agent" under the Loan Agreement, purportedly entered into the SPA, by which LSF10 purported to purchase 50% plus one shares of Atvos from Natixis, New York Branch, for US $5 million. *Id.* at ¶ 26; Sanfilippo Decl. Ex. 23).

The SPA does not state how LSF10 was able to obtain a controlling stake in Atvos, which was recently valued at BRL 6 billion (approximately US $1.25 billion), for the patently undervalue amount of US $5 million, or less than 0.4% of Atvos' estimated value. Gadelho Decl. at ¶ 27.  The extraordinarily low price that LSF10 paid to obtain the majority of Atvos and the absence of any notice by Lone Star, places the validity of the agreement and the means by which Lone Star purportedly effectuated it under grave doubt. *Id*.  As set forth in the injunction Atvos subsequently filed, and discussed in more detail below, Atvos is also concerned that the SPA constitutes a violation of Brazilian law including, but not limited to, the fact that Lone Star did not seek the approval of the purported change in control by the other creditors or Atvos, which Brazilian law requires because Atvos is in a Judicial Recovery proceeding. *Id*.

LSF10, in its capacity as special purpose entity of Lone Star, only provided notice to the Applicant *after the fact* that it had entered into the SPA by which it purportedly purchased enough shares to acquire a majority interest and controlling position of Atvos. *Id.* at ¶ 29; *see* Sanfilippo Decl. Ex. 22.  Applicant was not permitted to participate in any of the negotiations that led to the execution of the SPA, nor was it even provided notice that any such purported negotiations or

transactions were occurring. Gadelho Decl. at ¶ 29*; Sanfilippo Decl. Ex. 24.

Upon information and belief, the transaction was negotiated and executed between Lone Star, Natixis, New York Branch (as Collateral Agent), and the bridge lenders BBVA, Sumitomo Mitsui, MUFG Bank, and Intesa Sanpaolo NY in New York, involving numerous New York-based commercial counterparties. *See* Gadelho Decl. at ¶ 30. Those entities operated under forum selection and consent to jurisdiction clauses that set the Southern District of New York as the site of any litigation arising out of or relating to the SPA or the underlying loan agreements.[3]

Notably, Natixis, New York Branch entered into the SPA in its capacity as collateral agent for the other Bridge Lenders, as per the 2014 Loan Agreement. Gadelho Decl. at ¶ 31. In order to proceed with the purported sale of Atvos' controlling shares, Natixis, New York Branch had to enforce rights to collateral under the Loan Agreement, an action that required the involvement and consent of the other Bridge Lenders. *Id*. Upon enforcement of the collateral rights, Natixis, New York Branch and indirectly the other Bridge Lenders sold the corporate control of one of the largest ethanol and sugar companies in Brazil, a company valued at BRL 6 billion (approximately US $1.25 billion), for US $5 million to LSF10. *Id*. There has been no explanation why.

Lone Star's attempted hostile takeover was conducted without any prior notice to the Applicant and at nominal value, and therefore in violation of applicable Brazilian laws. *Id*. at ¶ 32.

---

[3] The SPA included a forum selection clause under which the LSF10 and Natixis, New York Branch as Collateral Agent to the Bridge Lenders, consented to jurisdiction in the United States in the Southern District of New York: "[E]ach party irrevocably submits to the jurisdiction of the courts of the state of New York located in the borough of Manhattan or the United States District Court for the Southern District of New York for the purposes of any suit, action, or other proceeding arising out of or relating to this guaranty or any transaction contemplated hereby." Gadelho Decl. at ¶ 28; Ex. 23 to Sanfilippo Decl. at § 4.10.

The Loan Agreement likewise contained forum selection clauses directly applicable to the Bridge Lenders, setting the Southern District of New York as the site for "any legal action or proceeding with respect to this agreement or any of the other loan documents." Gadelho Decl. at ¶ 8; Sanfilippo Decl. Ex.19 at § 9.10.

Not only was the purported purchase of Atvos' control not recorded in the corporate books (as required by Brazilian law), but Lone Star also attempted to enforce controlling shareholders rights that it was not entitled to in order to change the company's management and dictate a new judicial recovery plan. *Id*.

After entering into the SPA, Lone Star issued extrajudicial notifications to the Applicant, including demands such as to fire its counsel, in the Judicial Recovery Proceeding. *Id.* at ¶ 33. Lone Star also notified the other main creditors of Atvos that it did not agree with the plan and would not approve it, and filed a petition in the Judicial Recovery Proceeding claiming to be the new controller of Atvos. *Id*. Lone Star's actions had a chilling effect among creditors at the May 8, 2020, meeting, requiring the approval of the plan to be postponed to May 19, 2020. *Id.* at ¶ 34.

## IV.   Atvos' Attempt to Secure its Rights in the Brazilian Proceedings

Applicant has taken immediate actions in Brazil to prevent the hostile takeover of Atvos and protect the interests of other creditors in the face of Lone Star's illegal actions in connection with the approval of the judicial recovery plan. *Id.* at ¶ 24. Applicant attempted to negotiate in good faith with Lone Star and, when it became clear that an agreement would not be forthcoming, Applicant promptly moved to seek an injunction to block the transaction and the SPA. *Id*.

Proceedings relating to the SPA have moved quickly and would benefit greatly from the requested discovery. In the Judicial Recovery, the Court ruled on May 17, 2020 that Applicant remains the controlling shareholder of Atvos and denied Loan Star's request to suspend the creditors meeting scheduled for May 19, 2020. *See* Sanfilippo Decl. Ex. 25. A separate Brazilian Court likewise denied a different attempt by Lone Star to seize certain of Atvos' corporate books in a ruling on May 18, 2020. Gadelho Decl. at ¶ 41. That Court held that LSF10 had not established that it was the controlling shareholder of Atvos and requested that LSF10 provide further support

to its claims promptly. *Id.*

In addition to the above-referenced actions the Applicant has filed two different Brazilian proceedings against and in response to the aggressive conduct adopted by Loan Star, LSF10, and Natixis New York Branch, to challenge the illegal attempted hostile takeover of Atvos. *Id.* at ¶ 35.

*First,* Applicant commenced an arbitral proceeding against Natixis, New York Branch on May 5, 2020, to challenge the unlawful foreclosure of the shares given as collateral under the Loan Agreement (the "Arbitral Proceeding"). *Id.* at ¶ 36.  In this proceeding, Applicant argued that the Lone Star transaction was illegal because neither the Applicant nor the Odebrecht Group were able to take part in and oversee the collateral foreclosure proceedings by Natixis, New York Branch, thus violating Brazilian law. *Id.* at ¶ 39.  As such, the Applicant requested the arbitral tribunal to annul the acts that led to the illegal sale of Atvos' corporate control shares. *Id.*  The Applicant also requested the arbitral tribunal to issue separate notices to LSF10 to determine its interest in participating in the Arbitral Proceeding. *Id.*  That proceeding is pending. *Id.*

*Second,* Applicant filed Preliminary Injunction No. 1039147-12.2020.8.26.0100, on May 13, 2020, before the Judicial District Court of Sao Paulo against LSF10 and Natixis, New York Branch, to bar any corporate act that Lone Star may perform on behalf of Atvos (the "Preliminary Injunction"). *Id.* at ¶ 40.  Applicant filed for an injunction with a Brazilian court to prevent Lone Star from taking control of Atvos and to protect its rights and those of the other majority creditors. *Id.*  In particular, the Applicant requested the injunction to be in effect until the arbitral tribunal at the Brazil-Canada Chamber of Commerce is established. *Id.*  That proceeding is pending.

## **DISCOVERY TARGETS**

V. *Lone Star, LSF10 and Affiliates*

Lone Star is a U.S. private equity firm comprised of numerous affiliates and subsidiaries

that invests in distressed assets in the U.S., Canada, and other countries, including Brazil.  Upon information and belief, the SPA transaction was negotiated and executed between Lone Star, Natixis, New York Branch and the Bridge Lenders in New York. *Id*. at ¶ 30.

Lone Star operates in New York via Lone Star Global Acquisitions (NY), LLC and Lone Star North America Acquisitions, LLC, both of which are located at 888 7th Avenue, 11th Floor, New York, NY 10019. Sanfilippo Decl. at Ex. 1.  Lone Star's parent company, Lone Star Global Acquisitions, Ltd., is a Delaware registered entity with its address at 2711 North Haskell Avenue, Dallas, TX 75204-2912. *Id.*  Other affiliates Lone Star North America Acquisitions, L.P and Lone Star Global Acquisitions, LLC are both located at the same address in Dallas, Texas. *Id.*

LSF10 is an entity incorporated in Delaware, with corporate addresses registered at 1209, Orange Street, Corporation Trust Center, Wilmington, New Castle County, Delaware, 19801. LSF10 is a special purpose entity of Lone Star and, as further described above, was a party to the SPA and is active in the relevant litigation in Brazil. *Id.* at Ex. 2.

## VI.   *The Collateral Agent and the Bridge Lenders*

Natixis, New York Branch, the Collateral Agent for Bridge Lenders in the SPA, is the New York branch of a French corporate and investment bank with operations all over the world. Natixis, New York Branch, is located at 1251 Avenue of the Americas, New York, NY 10020. *Id.* at Ex. 3.  Upon information and belief, the SPA transaction was negotiated and executed between Lone Star, Natixis, New York Branch and the Bridge Lenders in New York. *Id*. at ¶ 30.

Intesa Sanpaolo NY, one of the Bridge Lenders, is the New York Branch of an international bank based in Italy.  Intesa Sanpaolo NY is located at 1 William Street, New York, NY 10004. *Id.* at Ex. 5.

BBVA, one of the Bridge Lenders, is a Spanish bank headquartered in Ciudad BBVA Calle

Azul, 4, Madrid, 28050, Spain, with branches and subsidiaries throughout the world, including in New York. *Id.* at Ex. 4.

MUFG Bank, one of the Bridge Lenders, is Japan's largest bank, with offices throughout Japan and in 40 other countries. Its headquarters are located at UFG 2-7-1 Marunouchi, Chiyoda-Ku, Tokyo-To, 100-8330, Japan and it has numerous branches and subsidiaries across the world, including in New York. *Id.* at Ex. 6.

Sumitomo Mitsui, one of the Bridge Lenders, is a Japanese bank headquartered at 1-1-2, Marunouchi, Chiyoda-ku, Tokyo, Japan.  Sumitomo Mitsui has 444 branches in Japan and numerous branches and subsidiaries across the world, including in New York. *Id.* at Ex. 7.

## **THE REQUESTED DISCOVERY**

Applicant seeks targeted discovery in the form of documents from Respondents from April 2017 (when the latest of the Brazil Actions commenced) to present, concerning the SPA and the underlying loan documents, with most requests targeted to the recently-executed SPA, the circumstances of its formation, and any purported negotiations, side deals, or financial transactions related thereto.  Atvos also seeks to depose corporate representatives of Respondents regarding the same topics.

## **ARGUMENT**

The Court should grant the Application because (i) it satisfies the statutory prerequisites for relief under § 1782 and (ii) the four discretionary *Intel* factors heavily favor granting the Application.

§ 1782 authorizes federal district courts to order persons and entities located in the United States to produce discovery for use in foreign legal proceedings. 28 U.S.C. § 1782(a).[4]  "[T]he statute has, over the years, been given increasingly broad applicability."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).  To obtain discovery under §1782, an applicant must show that (i) the person from whom discovery is sought resides or is found within the district; (ii) the discovery is "for use" in a proceeding before a foreign or international tribunal; and (iii) the applicant is an interested person under the statute. 28 U.S.C. § 1782(a); *see also Brandi-Dohrn*, 673 F.3d at 80.

Once the statutory requirements are met, courts consider four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), namely (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies"; and (iv) whether the discovery sought is "unduly intrusive or burdensome[.]" 542 U.S. at 264-65.  In considering these factors, courts exercise their discretion liberally in favor of deciding whether to grant the requested discovery. *See Brandi-Dohrn*, 673 F.3d at 80.

## VII.   THE APPLICATION SATISFIES THE STATUTORY REQUIREMENTS OF § 1782

The Second Circuit has "repeatedly recognized Congress' intent that § 1782 be 'interpreted broadly,' especially given the district court's ability 'to exercise discretion in deciding whether,

---

[4] 28 U.S.C. § 1782(a) provides, in relevant part:  "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal…The order may be made…upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

and in what manner, to order discovery in particular cases.'" *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (citations omitted.)

    A.  <u>Respondents are "Found" in the District</u>

Respondents are all "found in" the Southern District of New York.  As the Second Circuit has recently clarified, "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *Id*. at 527.  The Respondents are "found" in the SDNY by virtue of their (i) consent via forum selection clauses in the underlying transaction documents, (ii) their role in the transaction that gave rise to the actions in Brazil, (iii) and/or their presence in New York.

*First,* the Respondents are "found" in New York as the SPA and the underlying Loan Agreement specified that the parties consented to the jurisdiction of the SDNY.  The SPA's forum selection and consent to jurisdiction clause establishes that each party "IRREVOCABLY SUBMITS TO THE JURISDICTION" of the SDNY, which is the venue for "ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY TRANSACTION CONTEMPLATED HEREBY." Sanfilippo Decl. at Ex. 23 at § 4.10.

All the Bridge Lenders likewise consented to the jurisdiction of SDNY in the Loan Agreement in 2014, as referenced in the SPA. *Id.* at Ex. 19 at § 9.10.  As such, the SPA Respondents are "found in" the SDNY. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 63-64 (U.S. 2013) ("[E]nforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.")  Indeed, the Bridge Lenders have availed themselves of the New York courts by making certain filings and issuing restraining notices against certain

Odebrecht entities in the recent past. Sanfilippo Decl. Ex. 20, at 2; *see also In re del Valle Ruiz*, 939 F.3d 520, 530 (2d Cir. 2019).  As such they are "found" in the District for purposes of § 1782.

*Second*, all Respondents are "found" in New York by virtue of their involvement in the underlying transaction that led to the SPA and the Brazilian Proceedings.  As the Second Circuit articulated in *In re del Valle Ruiz*, "where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery.  That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." 939 F.3d at 530. That is plainly the case here, where the negotiations took place in New York, the SPA was, upon information and belief, signed in New York, and the collateral agent and party to the SPA, Natixis, New York Branch, was based in New York, and the underlying loan documents all provided that New York would be the situs of any litigation related to the bridge loans. *See In re ALB-GOLD Teigwaren GmbH*, 2020 WL 122943, at *4 (E.D.N.Y. Jan. 10, 2020) (finding specific personal jurisdiction where the target "engaged in all of the transactions and occurrences that are the subject of [the 1782] application while in this District"); *Matter of de Leon*, 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020) ("Because the information sought relates to CohnReznick's work for Northridge, an entity within this forum, the court finds that specific personal jurisdiction, and thus section 1782's 'resides or is found' requirement, are satisfied") (citing *In re del Valle Ruiz*).

*Lastly,* four of the Respondents, Natixis, New York Branch, Intesa Sanpaolo NY, Lone Star Global Acquisitions (NY) LLC, and Lone Star North America Acquisitions, LLC, are all domiciled in New York and thus plainly subject to jurisdiction under § 1782. *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014); *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (a corporation is found in a district where it is incorporated or headquartered); *In re Application*

14

*of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) ("[The discovery target] maintains its headquarters in New York, and thus is 'found' within this district").

      B.   The Requested Discovery is "for Use" in the Brazilian Proceedings

The requested documentary and testimonial evidence is "for use" in a foreign proceeding. The "for use" condition requires that the requested discovery has some relevance to the foreign proceeding. Here the underlying Brazilian Proceedings concern the validity of the SPA itself. In the Judicial Recovery action, the impact of the SPA will inform decisions about issues of control and ownership over Atvos and Applicant's ownership thereto.

§1782's requirements are easily satisfied here. This factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc.* (*Euromepa II*), 154 F.3d 24, 27 (2d Cir. 1998). Here, there are four separate actions in Brazil, two of which Applicant initiated and which relate directly to the SPA itself, and the others of which (including the Judicial Recovery) will impact the rights of the Applicant tremendously. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (finding the "for use" statutory requirement met where the applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation.").

All of those proceedings—commercial court actions, judicial restructurings (akin to U.S. Ch. 11 proceedings) and commercial arbitration—are plainly "adjudicative" in nature. In the § 1782 context, relevance "is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *See In re Application of Sveaas*, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008). The various

Brazilian litigations have already been the subject of vigorous advocacy and numerous interim rulings by various judges throughout the Brazilian judiciary.  Moreover the evidence sought is "for use" in those actions.  District courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82 (noting unanimity among the Circuits who have ruled on the issue).  Where relevance is in doubt, a court applying § 1782 should be "broadly permissive" of discovery. *Sveaas*, 249 F.R.D. at 107.  In this case the requirements of § 1782 are plainly met.

      C.   <u>Applicant is an "Interested Person" Due to Its Key Role in the Brazilian Proceedings</u>

As the plaintiff in two of the Brazilian Proceedings and an interested party in the Judicial Recovery action and additional Brazilian commercial court injunction action, Applicant is an "interested person" under § 1782. *See Intel*, 542 U.S. at 256, 258 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"); *Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (a party to the underlying foreign proceedings "is an 'interested person' within the meaning of the statute"); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) (same).

## VIII.   THE COURT SHOULD GRANT THE § 1782 APPLICATION UNDER THE DISCRETIONARY FACTORS IN *INTEL*

As a matter of discretion, under the Supreme Court's decision in *Intel*, the Application should also be granted.

      A.   <u>The Court Should Authorize the Requested Discovery as Most Respondents are not Participants in the Brazilian Proceedings</u>

The first discretionary factor leans strongly in favor of granting the requested discovery because the vast majority of Respondents are not parties to the Brazilian Proceedings. *Intel*, 542 U.S. at 264 (analyzing whether "the person from whom discovery is sought is a participant in

the foreign proceeding").  *First*, nine of the eleven Respondents are not parties to any of the underlying Brazilian actions.  Applicant seeks evidence related to the SPA, including any negotiations between the Bridge Lenders (nonparties to the Brazilian Proceedings) and New York and Texas-based Lone Star entities (also nonparties) regarding the SPA's formation and any side-agreements related thereto, as well the certain other loan agreements.  Those entities are nonparties and likely to have evidence strongly relevant to the Brazilian Proceedings.

*Second,* most respondents are not subject to jurisdiction in Brazil, and the Supreme Court has recognized that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence their evidence, available in the United States, may be unobtainable absent 28 U.S.C. § 1782 (a) aid." *Id.* at 264; *see also In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2008), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (holding that the first discretionary factor favored granting of the application where the respondent was not subject to the jurisdiction of the foreign tribunals).[5]

*Third,* courts in the Second Circuit routinely grant § 1782 applications seeking discovery from U.S. entities where an affiliate is involved in foreign litigation. *See, e.g.*, *Lufthansa Technik AG v. Astronics Corp.*, 553 F. App'x 22, 23 (2d Cir. 2014) ("Parent corporations have been compelled to produce documents in the hands of subsidiaries, and subsidiaries documents in the hands of their parent entities" (citing *United States v. Stein, 488 F.Supp.2d 350, 361*

---

[5] Even if Respondents were amenable to subject themselves to discovery in Brazil, Applicant need not first seek discovery in the foreign tribunal.  As the Second Circuit has explained, there is no "'quasi-exhaustion requirement' …that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court." See *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (internal quotations omitted); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) ("We find nothing in the text of 28 U.S.C. § 1782 which would support a quasi-exhaustion requirement").

*(S.D.N.Y.2007)*; *Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95 (2d Cir. 2009) (district court properly granted a § 1782 application requiring a U.S. subsidiary to produce evidence for use in foreign litigation against its parent company); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 142 F. App'x 516, 517 (2d Cir. 2005) (district court properly permitted a § 1782 applicant to use discovery from U.S. subsidiary in foreign patent litigation involving the parent corporation). Accordingly, this factor also weighs in favor of granting the Application as certain of the discovery targets are affiliates of parties to the underlying litigations in Brazil.

*Lastly,* to the extent LSF10 and Natixis, New York Branch are parties to the underlying Brazilian Proceedings, that factor should not be dispositive here. Indeed, one of the "twin aims" of the statute authorizing judicial assistance in obtaining evidence for use in a foreign proceeding is to provide "*efficient* assistance to participants in international litigation." *Intel*, 542 U.S. at 252 (emphasis added). Although "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant," *Intel*, 542 U.S. at 264, here, any concerns are minimal as the vast majority of the discovery targets are non-participants and it would be inefficient to burden the Brazilian courts with discovery requests that could be administered most efficiently here. As a number of courts have found, where the court grants the "application as to the nonparties, it is more efficient to grant the application as to the named defendants as well, rather than force [applicant] to petition the [foreign] court first and then return here if its efforts fail." *In re Sociedad Militar Seguro de Vida*, 985 F. Supp. 2d 1375, 1380 (N.D. Ga. 2013) (six of nine defendants not parties to the foreign action); *see also In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004) ("It is more efficient for [the district court] to

order discovery from persons located in such district than to force [applicant] to seek the same

discovery in as many as five foreign actions and return to this court if its efforts fail.")

      B.  <u>The Brazilian Courts in the Underlying Actions are Sophisticated and Receptive to the Receiving the Requested Discovery</u>

The Brazilian courts at issue would be receptive to the requested discovery.  In examining

the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials

should consider only authoritative proof that a foreign tribunal would ***reject*** evidence obtained

with the aid of section 1782." *Euromepa*, 51 F.3d at 1100 (emphasis added).  Authoritative proof

is limited to proof "embodied in a forum country's judicial, executive or legislative declarations

that specifically address the use of evidence gathered under foreign procedures[.]" *Id.*   In

examining receptivity, a district court should consider neither the *discoverability* of the evidence

in the foreign proceeding nor the *admissibility* of evidence in the foreign proceeding. *Brandi-

Dohrn*, 673 F.3d at 82.

U.S. courts routinely grant § 1782 applications seeking discovery for use in Brazilian

courts. *See, e.g.*, *In re Xavier*, 2006 WL 858489, at *1 (11th Cir. Apr. 4, 2006) (affirming grant of

§ 1782 application in aid of Brazilian proceedings); *Lopes v. Lopes*, 180 F. App'x 874, 878 (11th

Cir. 2006) (approving § 1782 discovery to be used in Brazilian court); *Medeiros v. Int'l Game

Tech.*, 2016 WL 1611591, at *3 (D. Nev. Apr. 22, 2016) (granting § 1782 application and finding,

"[t]here is no indication that the Brazilian court would be unreceptive to such discovery."); *In re

Pimenta*, 942 F. Supp. 2d 1282, 1290 (S.D. Fla. 2013) (granting § 1782 discovery in aid of

proceedings in Brazil probate court); *In re Application for an Order for Judicial Assistance in a

Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006)

(finding that Brazilian courts would likely be receptive to § 1782 discovery because, under the

Brazilian Constitution, only an explicit law or ruling can preclude foreign discovery").

Moreover, in this case, the Brazilian courts have not issued any such statement or order indicating they would not be receptive to such evidence.  Nor is there any indication, let alone authoritative proof, that the Brazilian courts would reject any of the documents or information gathered pursuant to the Application.

C.  This Application Does Not Circumvent Any Proof-Gathering Restrictions

Applicant seeks this discovery in good faith and is not attempting to circumvent the foreign tribunal's proof gathering restrictions.  To the contrary, Brazilian law, which governs the Brazilian Proceedings, does not prohibit the parties from seeking the assistance of U.S. courts in collecting evidence. Gadelho Decl. at ¶ 46.  Typically, courts weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See In re Application of Hill*, 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor") (internal quotations omitted); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*; 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).  Indeed, this Court has granted § 1782 applications even when the discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery overseas. *See, e.g.*, *In re Apostolos Mangouras to Conduct Discovery for Use in a Foreign Proceeding Pursuant to 28 U.S.C. 1782*, 2017 WL 4990655, at *6-7 (S.D.N.Y. Oct. 30, 2017).

Specifically with respect to Brazil, courts routinely permit discovery under § 1782. *See, e.g.*, *In re de Aquino Chad*, 2019 WL 2502060, at *4 (S.D.N.Y. Jun. 17, 2019) (granting § 1782 discovery against some financial institutions for use in a judicial recovery proceeding); *In re Labor Court of Brazil*, 466 F. Supp. 2d at 1034 (granting 28 U.S.C. § 1782 discovery for use in a Brazilian proceeding before a Brazilian labor court); *In re Pimenta*, 942 F. Supp. 2d 1282, 1287 (S.D. Fla.

2013) (granting § 1782 discovery for use in a Brazilian proceeding involving a dispute over a will probated in São Paulo).  Moreover, as noted *infra,* courts in the Second Circuit routinely grant § 1782 applications seeking discovery from U.S. entities where an affiliate is involved in foreign litigation.

### D.  The Requests Are Narrowly Tailored and Targeted

Applicant's proposed subpoenas are narrowly tailored and not "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265.  Atvos has propounded an average of six document requests per target, which seeks a discrete universe of documents for a limited timer period relating to the SPA and the administration and/or formation thereof.  Atvos has also limited the requested deposition testimony to the same topic.  Thus, the potential burden and expense of compliance would be minimal. *See Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (no undue burden where the document request was "specifically and narrowly tailored"); *Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 WL 2877156, at *5 (D. Conn. Aug. 27, 2009) (granting § 1782 application where "discovery [was] narrowly tailored to the subject matter of the [foreign] proceedings").

The scope of permissible discovery under Fed. R. Civ. P. 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Gorsoan Ltd.,* 2014 WL 7232262, at *5 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Ltd. & Gazprombank OJSC for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery v. Bullock*, 652 F. App'x 7 (2d. Cir. 2016).  In fact, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In addition to being relevant, the requested discovery is not unduly intrusive or burdensome, in that it can be readily identified by the likely custodians and is unlikely to consist of voluminous information. *See In re Application of Inversiones y Gasolinera Petroleos Venezuela*, 2011 WL 181311, at *13 (S.D. Fla. Jan. 19, 2011) (allowing discovery under § 1782 absent "specific showing" of burdensome or intrusive nature of request by respondent); *See also In re del Valle Ruiz*, 939 F.3d at 530 n.12 ("For instance, an applicant could target its discovery to all documents relating to *x* created during the course of respondent's engagement with forum entity *y*.")

## CONCLUSION

Based on the foregoing, Applicant respectfully petitions the Court to enter the proposed Order attached to the Application, authorizing issuance of the subpoenas attached to the Sanfilippo Decl. as Ex. 8-18 and directing the Respondents to respond to the subpoenas in accordance with such Order.

Dated:      New York, New York
            May 19, 2020

Respectfully submitted,

**KOBRE & KIM LLP**

/s/ Michael A. Sanfilippo _____
Michael A. Sanfilippo
michael.sanfilippo@kobrekim.com Kobre & Kim LLP
800 Third Avenue
New York, New York 10022 Tel: (212) 488-1200
Fax: (212) 488-1200

*Attorney for Applicant Atvos Agroindustrial Investimentos S.A*