```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____              │
│ DATE FILED:    8/24/2020             │
└─────────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: APPLICATION OF ATVOS
AGROINDUSTRIAL INVESTIMENTOS S.A.
UNDER 28 U.S.C. § 1782 TO TAKE
DISCOVERY FROM BANCO BILBAO
VIZCAYA ARGENTARIA, S.A., INTESA
SANPAOLO S.P.A., NEW YORK BRANCH,
LONE STAR GLOBAL ACQUISITIONS, LTD,
LONE STAR GLOBAL ACQUISITIONS, LLC,
LONE STAR NORTH AMERICA
ACQUISITIONS, L.P., LONE STAR GLOBAL
ACQUISITIONS (NY), LLC, LONE STAR
NORTH AMERICA ACQUISITIONS, LLC,
LSF10 BRAZIL U.S. HOLDINGS, LLC, MUFG
BANK, LTD., NATIXIS S.A., NEW YORK
BRANCH, AND SUMITOMO MITSUI
BANKING CORPORATION

1:20-MC-00211 (GBD) (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court are the following motions: (1) a motion by LSF10 Brazil U.S. Holdings, LLC ("LSF10"), Lone Star Global Acquisitions, Ltd. ("LSGA") and various subsidiaries of LGSA[1] (collectively, the "Lone Star Respondents") (a) to vacate the *ex parte* order of the Court (the "*Ex Parte* Order") entered in this case on June 3, 2020 granting the application of Atvos Agroindustrial Investimentos S.A. ("Applicant") to take discovery, pursuant to 28 U.S.C. § 1782, from the Lone Star Respondents (the "Application") and to deny the Application, and (b) to quash the subpoenas issued and served on the Lone Star Respondents pursuant to the *Ex Parte* Order (LS Resp'ts Mot. to Quash, ECF No. 53); (2) the motion of Natixis S.A., New York Branch ("Natixis"),

---

[1] The LGSA subsidiaries are Lone Star Global Acquisitions, LLC; Lone Star North America Acquisitions, L.P. n/k/a Lone Star Americas Acquisitions, Inc.; Lone Star Global Acquisitions (NY) LLC; and Lone Star North America Acquisitions, LLC n/k/a Lone Star Americas Acquisitions, Inc. (together with LGSA, referred to herein as the "LSGA-Related Respondents").

MUFG Bank, Ltd. ("MUFG"); Sumitomo Mitsui Banking Corporation ("Sumitomo") and Intesa Sanpaolo S.p.A., New York Branch ("Intesa") (collectively, the "Lender Respondents") (a) to vacate the *Ex Parte* Order, and (b) to quash the subpoenas issued and served on the Lender Respondents pursuant to the *Ex Parte* Order (Lender Resp't's Mot. to Quash, ECF No. 55); and (3) the motion of Banco Bilbao Vizcaya Argentaria, S.A. ("BBVA") (a) to vacate the *Ex Parte* Order, and (b) to quash the subpoena issued and served on BBVA pursuant to the *Ex Parte* Order. (BBVA Mot. to Quash, ECF No. 64.)

As set forth below, the motions to vacate the *Ex Parte* Order and to quash the subpoenas served pursuant to that Order upon the Lone Star Respondents, the Lender Respondents and BBVA are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.   Underlying Transactions And Agreements

Applicant, a company based in Sao Paulo, Brazil, is the sole owner of Atvos Agroindustrial S.A. – Em Recuperação Judicial ("Atvos"), a Brazilian holding company which produces sugar, ethanol and electric energy from sugarcane through a network of subsidiaries. (*See* Gadelho Decl., ECF No. 2-3, ¶ 4.) Applicant and Atvos are indirect subsidiaries of the Odebrecht Group ("Odebrecht"), a Brazilian construction, agriculture and industrial conglomerate. (*See id*. ¶ 6.)

In August 2014, Gasoducto Sur Peruano S.A. ("GSP"), an affiliate of Odebrecht, entered into a loan agreement for USD $600 million (the "Loan Agreement") with a consortium of financial institutions including BBVA, Natixis, Sumitomo, MUFG and Intesa (collectively, the "Lenders"). (*See* Gadelho Decl. ¶ 7.) As security for this loan, two other Odebrecht entities

entered into guaranty agreements. (*Id*.) The loan matured in April 2016, at which point GSP and the two Odebrecht guarantors defaulted on their obligations. (*See id*. ¶ 10.)

In April 2017, Natixis, as agent for the Lenders, entered into a forbearance agreement with the Odebrecht entities, agreeing to forgo exercising the Lenders' contractual rights under the guaranties. (*See* Gadelho Decl. ¶ 11.) In exchange, on April 24, 2017, Applicant entered into a Shares Fiduciary Assignment Agreement ("Fiduciary Assignment Agreement") which provided the Lenders additional collateral to secure payment of the loan in the form of a fiduciary lien over 50% plus one share of Atvos' capital stock. (*See id*. ¶ 12.)

On May 29, 2019, Atvos filed a judicial recovery protection request in Brazil before the First Court of Bankruptcy, Judicial Recovery Claims of the District of Sao Paulo ("Judicial Recovery Proceeding"). (Gadelho Decl. ¶¶ 14-15.) Affiliates of the Lone Star Respondents are creditors of Atvos in the Judicial Recovery Proceeding (*see id*. ¶¶ 17-21) and, according to Applicant, "Lone Star has always acted as a dissident creditor in the Judicial Recovery Proceeding, refusing to start a negotiation with Atvos and taking several measures to prevent the approval of the judicial recovery plan."[2] (*Id*. ¶ 22.)

On May 4, 2020, LSF10 (which is a special purpose entity affiliated with the Lone Star Respondents) and Natixis, in its capacity as "Collateral Agent" under the Loan Agreement, entered into a share purchase agreement ("SPA") by which LSF10 purchased 50% plus one share of Atvos from Natixis for US $5 million. (*See* Gadelho Decl. ¶ 26; Sanfilippo Decl. Ex. 23, ECF No.

---

[2] On August 17, 2020, the court supervising the judicial restructuring proceeding for Atvos and its subsidiaries issued an order confirming the consolidated judicial recovery plan (the "Plan"), pursuant to the terms previously approved by the majority of the creditors in a meeting held on May 20, 2020. The court did not resolve any disputes related to the ownership of Atvos' shares. (Joint Status Rpt. at 3-4.)

2-5, at PDF pp. 382-86.) The SPA is at the heart of the arbitral and litigation proceedings in Brazil, which are discussed below.

## II.      Arbitral Proceeding (CAM-CCBC 31/22020)

On May 5, 2020, Applicant initiated an arbitral proceeding (the "Arbitration") in the Center for Arbitration and Mediation of the Chamber of Commerce Brazil-Canada ("CAM-CCBC") against Natixis, challenging the validity of the foreclosure of the assigned shares under the Fiduciary Assignment Agreement, as well as the enforceability and the validity of the SPA. (*See* Gadelho Decl. ¶ 39.) In the Arbitration, Applicant seeks to annul LSF10's purchase, alleging that the SPA is invalid because neither Applicant nor Odebrecht participated in the collateral foreclosure proceeding, and because the price paid under the SPA was too low. (*See id*.) Applicant requested the arbitral tribunal to annul the acts that led to the sale of Atvos' corporate control. (*Id*.)

On May 13, 2020, Applicant submitted a motion for joinder to notify LSF10 to join the proceeding. (Kurzweil Decl., ECF No. 54-1, ¶ 35.) LSF10 opposed, arguing that it is not a proper party to the Arbitration because it has no contractual relationship with Applicant, is not a party to the Fiduciary Assignment Agreement and is not a party to any agreement that could bind it to the Arbitration. (*See id*.) On July 21, 2020, the Brazil-Canada Chamber of Commerce granted Applicant's motion. (Gadelho Supp. Decl., ECF No. 68, ¶ 17.) However, the decision is subject to further review by the arbitral tribunal. (*Id*.) Although two of the arbitrators have been appointed, the third arbitrator has not yet been appointed. (Joint Status Rpt., ECF No. 82, at 2.)

III. **Applicant's Injunction Proceeding No. 1039147-12.2020.8.26.0100 Against LFS10 and Natixis**

On May 13, 2020, Applicant filed an injunction proceeding seeking interlocutory relief prior to arbitration in the Business Court of the Judicial District of Sao Paulo in an attempt to challenge the SPA. (*See* Gadelho Decl. ¶¶ 37, 41.) On June 10, 2020, the court denied Applicant's request for an injunction. (LS Resp'ts Mem. Ex. 3-C, ECF No. 54-7.) The court ruled that Natixis and LSF10 had "no legal obligation" to notify Atvos or Applicant of the foreclosure or sale of shares because neither Atvos nor Applicant had a preemptive right either under the contract or Brazilian law. (*Id*. at Sheet 3899.) The court ruled that "[i]n short, in this respect, there was no breach of contractual obligation by NATIXIS that could compromise the process of forfeiture. On the contrary, it adhered to the provisions of the [Fiduciary Assignment A]greement." (*Id*.) The court further held "that NATIXIS, from the moment the [Fiduciary Assignment A]greement was concluded, became the conditional owner of the shares . . . as this was the will of the former parent company, [Applicant] . . .." (*Id*. at Sheet 3900.)

Applicant appealed and the reporting judge in the appellate proceeding denied the injunctive relief requested. (LS Resp't Mem. Ex. 3-E, ECF No. 54-9, at 12.) This appeal is pending final judgment by a three-judge panel. (Gadelho Supp. Decl. ¶ 21.) On August 6, 2020, the Sao Paulo Prosecutor's Office filed a motion requesting dismissal of the interlocutory appeal filed by Applicant. (Joint Status Rpt. at 3.)

IV. **LSF10's Injunction Proceeding No. 1039087-39.2020.8.26.0100 (which has been converted to an ordinary proceeding)**

On May 13, 2020, LSF10 filed a preliminary injunction proceeding against Atvos before the District Court of Sao Paulo seeking an order allowing LSF10 to register the Atvos shares it

purchased from Natixis in Atvos' books and records (the "LSF10 Proceeding"). (*See* Gadelho Decl. ¶ 41; Gadelho Supp. Decl. ¶ 23.) On June 15, 2020, the Brazilian court issued its ruling. Although the court held that LSF10 was likely to succeed on the merits, it declined to grant the injunction, due to the "irreversibility" or "permanent consequences" of any decision ordering that LSF10's shares be registered in Atvos' books. (Lone Star Mem. Ex. 3-G, ECF No. 54-11, at Sheet 1590.)

On June 4, 2020, LSF10 filed an amended petition claiming that it should be granted permission to seize Atvos' corporate books because the transaction was valid. (Gadelho Supp. Decl. ¶ 24.) On June 19, 2020, the court denied LSF10's request. (*Id*.) LSF10 appealed this decision through a motion for reconsideration, which was denied on July 3, 2020. (*Id*.)

On July 15, 2020, LSF10 filed a complaint converting the injunction proceeding into an ordinary proceeding against Applicant, pursuant to the Brazilian Code of Civil Procedure. (Gadelho Supp. Decl. ¶ 25.) LSF10 requested the court to order: (i) Atvos to register the share transfer within 48 hours from when a court decision is granted; and (ii) set forth a daily fine of BRL 1 million in case of failure to comply. (*Id*.)

On July 29, 2020, LSF10 filed an interlocutory appeal to try to overturn the lower court's decision that denied its injunction request requiring Atvos to register LSF10's majority ownership in its books and records. (Joint Status Rpt. at 2.) On July 31, 2020, the reporting judge issued a preliminary decision denying LSF10's request for interim relief on its interlocutory appeal. (*Id*.) On August 20, 2020, LSF10 filed an appeal to challenge the preliminary decision. (*Id*. at 3.) Applicant and Atvos filed their answers in the main proceeding on August 20, 2020. (*Id*.) Although Applicant and Atvos have requested to stay the LSF10 Proceeding (*id*.), the parties conceded

during oral argument that the LSF10 Proceeding has not been stayed, and the proceeding continues.

**V.      Applicant's Injunction Proceeding No. 1033372-39.2020.4.01.3400**

On June 14, 2020, Applicant brought another injunction proceeding—this time before the Federal Court in Brasilia—against LSF10 and Natixis requesting the court to stay any transfer of shares on the grounds of the lack of prior authorization to complete the transaction by CADE[3] and INCRA.[4] (Gadelho Supp. Decl. ¶ 35.) Applicant "challenges any potential violation to the Brazilian Antitrust Law, which imposes restrictions to the purchase of rural property by foreign persons (both legal entities and individuals)." (*Id*.) On June 15, 2020, the court issued an order granting a stay of any transfer of shares until the two regulatory agencies presented their positions. (*Id*. ¶ 36.) While CADE already had approved the transaction, INCRA had not yet issued its final ruling. (*Id*.) The parties advised the Court during oral argument that the Federal Court dismissed this proceeding on Friday, August 21, 2020 for lack of jurisdiction.[5]

**PROCEDURAL HISTORY**

On May 20, 2020, Applicant filed the Application, pursuant to 28 U.S.C. § 1782, to take discovery from the Lone Star Respondents, the Lender Respondents and BBVA in furtherance of

---

[3] CADE, which is the Brazilian antitrust authority, approved the transaction after-the-fact on July 3, 2020, but LSF10's alleged gun-jumping is still under review in CADE Proceeding No. 08700.002365/2020-45. (Gadelho Supp. Decl. ¶ 34.)

[4] The National Institute of Colonization and Agrarian Reform (INCRA) ("Instituto Nacional de Colonização e Reforma Agrária") is the Brazilian federal agency established in 1970 to oversee agrarian reform and rural resettlement. *See* J. Intrator, *From Squatter to Settler: Applying the Lessons of Nineteenth Century U.S. Public Land Policy to Twenty-First Century Land Struggles in Brazil*, 38 Ecology L.Q. 179, 189 (2011).

[5] Applicant also states that it contemplates additional proceedings in Brazil. (*See* Gadelho Supp. Decl. ¶ 39.)

legal and arbitral proceedings in Brazil (the "Brazilian Proceedings"). (Application, ECF No. 2.) In support of the Application, Applicant submitted, among other things,[6] forms of subpoenas to be served on each of the Respondents. (Sanfilippo Decl. Exs. 8 to 18, ECF Nos. 2-5 & 2-6.) The subpoenas seek the deposition of each of the Respondents, as well as the production of documents from the Respondents for the period from April 1, 2017 to the present concerning the SPA and the underlying transactions and agreements discussed above. (*See id*.) On June 3, 2020, District Judge Daniels signed the form of Order submitted by Applicant (Proposed Order, ECF No. 2-1), which authorized Applicant to serve the subpoenas on the Respondents. (*Ex Parte* Order, ECF No. 3.)

After service of the subpoenas, on July 20, 2020, the Lone Star Respondents and the Lender Respondents filed their motions to quash, and on July 27, 2020, BBVA filed its motion to quash. (*See* LS Resp't's Mot. to Quash; Lender Resp't's Mot. to Quash; BBVA Mot. to Quash.) The Lone Star Respondents submitted a Declaration from Bruno Kurzweil de Oliveira, an attorney licensed to practice in Brazil. (Kurzweil Decl. ¶ 1.) In his Declaration, Kurzweil addressed the legal and arbitral proceedings discussed in the Gadelho Declaration, bringing the status of those proceedings up to date.[7] (*See* Kurzweil Decl. ¶¶ 26-51.)

On July 28, 2020, Applicant filed its memorandum of law in opposition to the motions to quash made by the Lone Star Respondents and the Lender Respondents. (App. Opp. Mem. 1, ECF

---

[6] Among the documents Applicant submitted was the Declaration of Laura Gadelho, an attorney licensed to practice in Brazil, which discussed, *inter alia*, the status of certain legal and arbitral proceedings pending in Brazil at the time she executed her Declaration. (*See* Gadelho Decl. ¶¶ 1, 14-15, 24-25, 35, 41.)

[7] The Lone Star Respondents, the Lender Respondents and BBVA also submitted various other Declarations in support of their motions to quash. (*See* Declarations, ECF Nos. 54-2, 54-4, 57, 58, 59, 60, 66.)

No. 67.) Applicant also submitted a supplemental Declaration from its Brazilian counsel, Gadelho, in which she "provide[d] updates" regarding the Brazilian Proceedings referenced in her first Declaration, "describe[d] new proceedings in Brazil" and "discuss[ed] potentially contemplated proceedings" by Applicant or its affiliates. (*See* Gadelho Supp. Decl. ¶ 4.)

On August 3, 2020, the Lone Star Respondents and the Lender Respondents filed their reply memoranda in further support of their motions to quash. (LS Resp't Reply, ECF No. 70; Lender Resp't Reply, ECF No. 71.) The Lone Star Respondents also filed a motion to strike the supplemental declaration from Applicant's Brazilian counsel.[8] (LS Resp't Mot. to Strike, ECF No. 73.)

On August 3, 2020, Applicant filed its memorandum of law in opposition to BBVA's motion to quash. (App. Opp. Mem. 2, ECF No. 74.) On August 5, 2020, BBVA filed its reply memorandum in further support of its motion to quash. (BBVA Reply, ECF No. 75.) BBVA also filed two Declarations. (Crasny Decl., ECF No. 76; Castiella Decl., ECF No. 77.)

On August 11, 2020, Judge Daniels referred the pending motions to me for resolution. (Order of Ref., ECF No. 79.) On August 20, 2020, as directed by me, the parties filed a joint letter updating the status of the Brazilian proceedings. (*See* Joint Status Rpt.)

Oral argument by telephone was held on August 24, 2020.

## **LEGAL STANDARDS**

Pursuant to 28 U.S.C. § 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other

---

[8] Since, as set forth below, the Court is granting the Lone Star Respondents' motion to quash, the Court separately shall deny as moot their motion to strike.

thing for use in a proceeding in a foreign or international tribunal . . .." 28 U.S.C. § 1782(a). Such an order may be made "upon the application of any interested person." *Id*. "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id*.

In ruling on a Section 1782 application, a district court first must determine whether three statutory requirements are met: (1) the person from whom discovery is sought must "reside" or be "found" in the district, (2) the discovery must be "for use in a proceeding before a foreign tribunal," and (3) the application must be "made by a foreign or international tribunal or any interested person." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018), *cert. denied sub nom. Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, ——— U.S. ———, 139 S. Ct. 852 (2019).

After determining that the statutory requirements are met, the court then must exercise its discretion, considering four factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004): (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Id*. at 264-65.

"The *Intel* factors are not to be applied mechanically," *Kiobel*, 895 F.3d at 245, as they are simply "guides for the exercise of district-court discretion." *Intel*, 542 U.S. at 263 n.15. These factors are "non-exclusive," *Kiobel,* 895 F.3d at 244, and the district court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id*. at 245. "[D]istrict courts must exercise their discretion under § 1782 in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts . . ..'" *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). The Second Circuit has "repeatedly recognized Congress's intent that § 1782 be 'interpreted broadly,' especially given the district court's ability 'to exercise discretion in deciding whether, and in what manner, to order discovery in particular cases.'" *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (citation omitted).

Any discovery permitted under 28 U.S.C. § 1782 is subject to the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a) (". . . the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure"). Rule 45 of the Federal Rules of Civil Procedure governs depositions of non-parties by subpoena. *See* Fed. R. Civ. P. 45. Rule 45 provides that a subpoena may be quashed or modified if it is unduly burdensome. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

A Section 1782 application is non-dispositive and may be decided by a magistrate judge by opinion and order, rather than a report and recommendation to the district court. *See In re Hulley Enterprises Ltd*., 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019) (Daniels, J.) ("This Court agrees with the majority of courts finding that rulings on § 1782 applications are *not* dispositive." (emphasis

in original) (citations omitted)). Since District Judge Daniels has referred the pending, non-dispositive motions relating to his own *Ex Parte* Order deciding the Application to me (*see* Order of Ref.), I have the authority to decide them in this Opinion and Order.

## DISCUSSION

In resolving the motions before it, the Court must consider the mandatory criteria and discretionary factors associated with a Section 1782 application, which are addressed in turn below.

### I.  Mandatory Criteria Of Section 1782

#### A.  Respondents Are Located In This District

The Lone Star Respondents and the Lender Respondents do not dispute that they are located in this District. (*See* LS Resp't Mem. at 11-12 (challenging only second statutory criterion); *see also* Lender Resp't Mem. at 1 (joining arguments of Lone Star Respondents and not challenging first statutory criterion).) Similarly, BBVA does not dispute that it is located in this District. (*See* BBVA Mem. at 1 (joining arguments of Lone Star Respondents and not challenging first statutory criterion).)

#### B.  Applicant Seeks Discovery "For Use" Before A Foreign Tribunal

Respondents challenge that the discovery sought by Applicant is "for use" before a "foreign or international tribunal." (*See*, *e.g.*, LS Resp't Mem. at 11-15.) Respondents are correct that, under controlling Second Circuit law, the tribunal that will sit in the Arbitral Proceeding before the CAM-CCBC is not a "foreign or international tribunal" under 28 U.S.C. § 1782. The Second Circuit recently reaffirmed that "'international arbitral panels created exclusively by private parties' are not 'foreign or international tribunals'" within the meaning of § 1782." *In Re*

*Guo*, 965 F.3d 96, 107 (2d Cir. 2020), *as amended* (July 9, 2020) (citation omitted). Thus, Applicant is not entitled to discovery for use in the Arbitral Proceeding. However, the Court finds that Applicant has made the required *de minimis* showing that it is seeking discovery "for use" in proceedings in a Brazilian court. *See In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (citing cases for the proposition that "the burden imposed upon an applicant is *de minimis*").

On May 13, 2020, LSF10 brought its injunction proceeding in the Brazilian courts against Applicant (that later was converted to an ordinary proceeding) in which LSF10 is seeking to require Atvos to register the share transfer, pursuant to the SPA. (*See* Gadelho Supp. Decl. ¶ 25.) The LSF10 Proceeding still is pending. Applicant, through its Brazilian counsel, contends that the discovery sought could be relevant to its defenses in this proceeding; for example, "that the transaction resulted from illegal conduct by some or all of the Respondents, and/or violated notification requirements, pursuant to the applicable Brazilian laws." (*See id*. ¶ 26.) Applicant has shown that the discovery it seeks is "for use" in the LSF10 Proceeding that was pending at the time it filed its Application on May 20, 2020.

It is not incumbent on this Court "to predict or construe the substantive law" in Brazil in order to determine if the discovery sought by Applicant will be admissible in a Brazilian court. *See In re Aso*, No. 19-MC-00190 (JGK) (JLC), 2019 WL 2345443, at *4 (S.D.N.Y. June 3, 2019). Rather, "[i]t is sufficient that the evidence will be offered" by Applicant in the proceedings. *See In re Application of Grupo Qumma*, No. M 8-85, 2005 WL 937486, at *2 (S.D.N.Y. Apr. 22, 2005).

### C.  Applicant Is An Interested Person

Respondents do not challenge that Applicant is an interested person. In any event, since Applicant is a litigant in the LSF10 Proceeding, it plainly is an interested person. *See Intel*, 542 U.S.

at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").

**II.** **_Intel_'s Discretionary Factors**

The Court next considers below the _Intel_ discretionary factors.

**A.** **Whether Respondents Are Party To Foreign Proceeding**

The first _Intel_ factor looks to whether the persons from whom discovery is sought are participants in the foreign proceeding. _See Intel_, 542 U.S. at 264. If a respondent is a participant, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." _Id_. This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." _Id_.

In the present case, LSF10 is the plaintiff in the LSF10 Proceeding and thus this factor weighs against granting the Application as to LSF10. Moreover, the Lone Star Respondents assert that "the LSGA-Related Respondents do not possess any discovery relevant to the Brazilian Proceedings that is outside LSF10's possession, custody, or control" and that, since LSF10 is a party to the relevant Brazilian proceedings, the first _Intel_ factor weights against discovery from the LSGA-Related Respondents as well. (_See_ LS Resp'ts Mem. at 18 n.36 (citing Lipshy Decl., ECF No. 54-2, ¶ 9).) The Court agrees based upon relevant Second Circuit authority.

In _Schmitz v. Bernstein Liebhard & Lifshitz, LLP_, 376 F.3d 79, 84 (2d Cir. 2004), the Second Circuit affirmed the district court's denial of a Section 1782 application seeking discovery from Cravath, Swaine & Moore ("Cravath"), counsel for Deutsche Telekom AG ("DT"), a German corporation in furtherance of legal proceedings pending in Germany. _Id_. The Second Circuit held that the district court's decision found support in _Intel_'s first factor: "Although technically the

respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation." *Id*. at 85. Here, as in *Schmitz*, for all intents and purposes, by serving subpoenas on the LSGA-Related Respondents, Applicant is seeking discovery from LSF10, its opponent in the Brazilian litigation.

The Lender Respondents and BBVA are not parties to the LSF10 Proceeding. Thus, the first *Intel* factor weighs in favor of granting the Application as to them.

### B.  Receptivity Of Foreign Government To U.S. Federal Court Judicial Assistance

The second *Intel* factor weighs "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id*. at 1100.

Applicant has made a showing that the Brazilian courts would be receptive to evidence obtained through the Application. Applicant's Brazilian counsel states that "[u]nder Brazilian law, the parties to a judicial proceeding are entitled to submit any kind of evidence to the court, as long as that evidence has not been improperly obtained." (*See* Gadelho Decl. ¶ 43.) Respondents have failed to provide authoritative proof to the contrary. Thus, the *Intel* second factor weighs in favor of granting the Application.

### C.   Whether The Application Circumvents Foreign Proof-Gathering Restrictions

The third *Intel* factor considers "'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States.'" *Intel*, 542 U.S. at 265. The Second Circuit has noted that this factor does "not 'authorize denial of discovery pursuant to § 1782 solely because such discovery is unavailable in the foreign court, but simply . . . allow[s] consideration of foreign discoverability (along with many other factors) when it might otherwise be relevant to the § 1782 application.'" *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (quoting *In re Metallgesellschaft*, 121 F.3d at 79). "Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . ., or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding." *In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 18-MC-00047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) (citations omitted).

Respondents posit, and Applicant conceded during oral argument, that the opportunity to obtain pretrial discovery in Brazil is limited. (*See* LS Resp'ts Mem. at 21.) Thus, Applicant made the tactical decision to seek discovery from its opponent (and its affiliates) in the LSF10 Proceeding in Brazil under U.S. law. It appears that Applicant may be trying to do an end run around proof-gathering restrictions in Brazil. Thus, as to the Lone Star Respondents, the Court finds, in its discretion, that the third *Intel* factor weighs against granting the Application.

With respect to the Lender Respondents and BBVA, however, as Applicant notes, Brazilian courts allow parties to seek the assistance of foreign courts in collecting evidence. (*See* Gadelho

Supp. Decl. ¶¶ 7-8.) Thus, as to the Lender Respondents and BBVA, the third *Intel* factor weighs in favor of granting the Application.

### D.    Whether The Application Is Unduly Intrusive Or Burdensome

The fourth *Intel* factor considers whether the applicant's request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The Lender Respondents object to the scope of the subpoenas and argue that, if their motion to quash is not granted, the discovery should be "tailor[ed]." (*See* Lender Resp't's Mem., ECF No. 56, at 9-14.)

The Court has concerns about the scope of the subpoenas and the burdens associated therewith. By way of example, regarding temporal scope, each subpoena "calls for the production of documents from April 1, 2017 to the present." (*See* Sanfilippo Decl. Exs. 8 to 18, at Instruction No. 8.) In contrast, the Declaration from Applicant's Brazilian attorney states that Applicant seeks documents "generally from May 2019, (around the time discussions concerning the hostile takeover may have commenced) to present, concerning communications that may relate to the hostile takeover of Atvos." (Gadelho Decl. ¶ 42.) Moreover, BBVA asserts that the evidence that Applicant seeks from BBVA is in Spain, and that "production of that evidence would potentially violate European Union privacy law." (BBVA Mem., ECF No. 65, at 1, 8-11.)  Applicant states that it "is ready to immediately meet and confer to resolve any concerns regarding the scope of discovery, which can take place without the Court's involvement." (App. Opp. Mem. 1 at 27.) Thus, the fourth *Intel* factor may be addressed by requiring Applicant to narrow the scope of the subpoenas. *See Intel*, 542 U.S. at 265 ("unduly intrusive or burdensome requests may be rejected or trimmed"); *accord Mees*, 793 F.3d at 302 ("it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign

litigation by issuing a closely tailored discovery order rather than by simply denying relief outright") (quoting *Euromepa S.A.*, 51 F.3d at 1101).

*         *         *

The Court, in its discretion, GRANTS IN PART and DENIES IN PART Respondents' motions to vacate the *Ex Parte* Order and quash the subpoenas. After careful consideration of the record before it and the arguments of counsel, and weighing the *Intel* factors, the Court vacates the *Ex Parte* Order insofar as it authorized the issuance of subpoenas to the Lone Star Respondents, and the Court quashes the subpoenas served upon the Lone Star Respondents.

The Court denies the motions to vacate made by the Lender Respondents and BBVA. The first three *Intel* factors weigh in favor of granting the Application as to the Lender Respondents and BBVA. With respect to the fourth *Intel* factor, the burden upon the Lender Respondents and BBVA shall be addressed by requiring the parties to meet and confer in order to narrow the scope of the subpoenas. Thus, the motions to quash made by the Lender Respondents and BBVA are granted in part to the extent of requiring Applicant to narrow the scope of the subpoena.

## CONCLUSION

For the foregoing reasons, the motions to vacate and quash filed by the Lone Star Respondents, the Lender Respondents and BBVA (ECF Nos. 53, 55, 64) are GRANTED IN PART and DENIED IN PART. The Court vacates the *Ex Parte* Order only insofar as it authorized the issuance of subpoenas to the Lone Star Respondents, and the Court quashes the subpoenas served upon Lone Star Respondents. With respect to the subpoenas served upon the Lender Respondents and BBVA, Applicant shall meet and confer with the Lender Respondents and BBVA in the next fourteen days on a Respondent-by-Respondent basis in order to narrow the scope of the

subpoenas and reduce the burden on Respondents. If the parties are unable to agree on the scope of the subpoenas, they shall submit a joint letter to the Court no later than September 11, 2020 setting forth the parties' respective positions.

**SO ORDERED.**

DATED:          New York, New York
                August 24, 2020

_____
STEWART D. AARON
United States Magistrate Judge